(631 P.2d 255)

No. 52,314

In the Matter of the Adoption of DARCY GENE SMITH, a/k/a DARCY GENE ZIMMERMAN, a minor child.

Opinion filed July 10, 1981.

*Thomas C. Boone,* of Hays, for the appellants.

*Daniel C. Walter,* of Ryan, Kent, Wichman, Walter & McClymont, Chartered, of Norton, for the appellee.

Before FOTH, C.J., REES and SWINEHART, JJ.

SWINEHART, J.: This is an appeal by petitioners from a ruling denying their petition to adopt.

Gaylene Sue Smith, the natural mother, is twenty-five years of age and has a ninth-grade education. She has an eight-year-old son in the custody of her first husband. She has three daughters, aged seven, six and four, born of her second marriage to Carroll Smith. Darcy Gene Smith, age six, is the subject of this adoption petition. Carroll Smith was retired from the Army and died of a cerebral hemorrhage at the age of forty-three in August, 1976. Gaylene has another son, almost two, by her third husband, Ron Bohl. Gaylene, her last four children and Ron Bohl currently live together.

Petitioners, Ricky and Cherry Zimmerman, ages twenty-eight and twenty-five years old, are both high school graduates. They have been married five years and have no children. Ricky has been regularly employed since high school. Cherry and Gaylene were friends in school.

After the death of Carroll Smith, Gaylene and her children moved from South Carolina back to Phillipsburg, Kansas, into a house three blocks from Cherry and Ricky Zimmerman. Gaylene and the children lived on social security and veteran's administration benefits. Cherry babysat for Darcy five or six days a week.

On May 16, 1977, Darcy was left in the care of the Zimmermans. According to Cherry, Gaylene asked her to keep Darcy until she was eighteen. Gaylene denies this, and states Cherry offered to help her out with Darcy while Gaylene got over her

grief from the death of Carroll Smith. Gaylene agreed to let Cherry keep Darcy only if she could visit as frequently as she liked.

When Ricky Zimmerman was transferred to Joplin, Missouri, in July of 1979, Cherry and Darcy moved there with him. On August 16, 1979, Gaylene unsuccessfully tried to get Darcy back by means of a writ of habeas corpus filed in Kansas. No formal action was taken, and on September 24, 1979, the trial court dismissed this action on its own motion. On October 1, 1979, Gaylene filed a declaratory action in Phillips County, seeking a declaration that she was Darcy's natural mother and that she was entitled to the physical and legal care, custody and control of Darcy. Proper service of process was procured on petitioners in Missouri on October 31, 1979. In November of 1979, the Zimmermans and Darcy moved to Kearney, Nebraska, where Ricky took a new job. On December 5, 1979, Gaylene received a default judgment in accordance with the prayer in her petition.

On February 4, 1980, the Zimmermans filed a petition for the adoption of Darcy in Phillips County. The petition alleged that Gaylene had failed to assume the duties of a parent for more than two years, and that under K.S.A. 59-2102 her consent was not necessary for the adoption. This petition was not accompanied by any form of consent. After petitioners' motions for the appointment of a guardian ad litem and for the release of social security records were denied, petitioners, on March 31, 1980, moved to disqualify the judge. The disqualification was denied and trial was held on May 27, 1980. The adoption was denied, and Darcy was returned to Gaylene. Petitioners appeal.

The issues raised by petitioners are as follows: (1) whether the court erred in finding the consent of the natural mother was necessary; (2) whether the court erred in denying the petitioners' application for the appointment of a guardian ad litem; and (3) whether Phillips County District Judge Charles E. Worden should have been disqualified from hearing the adoption petition.

The crucial question for decision in this case is the necessity of a consent from the mother or other statutorily authorized person as set forth in K.S.A. 59-2102 (4) and (5). It is undisputed by the parties that the natural mother did not consent to this adoption, that a legal guardian had not been appointed so that such consent could be given, and that those agencies set forth in K.S.A. 59-2102 (5) are not involved in this matter.

K.S.A. 59-2101 *et seq.,* and 59-2277 *et seq.,* provide that a consent from some statutorily authorized person is essential in the proper filing of a petition for adoption. The failure to comply with this requirement deprives the court of jurisdiction to hear and grant the relief requested.

For the purpose of this decision, we find it unnecessary to address the question of the alleged failure of the natural mother to assume her parental responsibilities for a period of more than two years.

Petitioners requested the appointment of a guardian ad litem to represent "the best interests of the child." Neither the adoption code, K.S.A. 59-2101 *et seq.,* nor the adoption proceedings code, K.S.A. 59-2277 *et seq.,* requires or suggests the appointment of a guardian ad litem. K.S.A. 59-2278 requires the Kansas Department of Social and Rehabilitation Services (SRS) to investigate the advisability of the adoption and to report its findings and recommendations at least ten days prior to the adoption hearing. SRS and the court are essentially charged with protecting the interests of the child. Under K.S.A. 59-2102 (4) the legal guardian of the child can consent to an adoption if both parents are dead or if they have failed to assume the duties of parents for two consecutive years. A guardian ad litem is not empowered to give this consent. We find under the facts herein that the law does not provide for the appointment of a guardian ad litem and, therefore, it was not error to refuse the requested appointment.

Finally, we consider the question of the court's failure to grant a disqualification of Judge Worden to hear the adoption petition. The record is undisputed that the petitioners were well-acquainted with the fact that Judge Worden had presided at the declaratory and habeas corpus proceedings and had voiced some opinions concerning petitioners' actions. The petitioners, subsequent to obtaining this knowledge, specifically requested Judge Worden to preside over this adoption proceeding, and only after adverse rulings by the court on their motions for appointment of guardian ad litem and release of social security records did petitioners file their affidavit of disqualification.

It is not necessary to determine the adequacy of the petitioners' affidavit. K.S.A. 1980 Supp. 20-311f states:

"(*a*) No party shall be granted more than one change of judge in any action, but

each party shall be heard to urge his or her objection to a judge in the first instance, except that in pre-judgment matters a party shall have seven (7) days after pre-trial, or after receipt of written notice of the judge to which the case is assigned or before whom the case is to be heard, whichever is later, in which the affidavit may be filed. In post judgment proceedings the affidavit may be filed at any time.
"(b) The trial shall be held within the county in which venue lies."

There was no pretrial in this case, but under K.S.A. 59-2278 the adoption hearing must be held not less than thirty days or more than sixty days from the filing of the petition. The motion for disqualification was filed fifty-six days after the filing of the adoption petition. Simultaneously with the adoption petition, a motion requesting the case be assigned to Judge Worden was filed by these petitioners. We find that this action came too late in time to meet the requirements of K.S.A. 1980 Supp. 20-311f (a).

Affirmed.

REES, J.: concurring.

In this case, K.S.A. 59-2102 required the consent of Gaylene Smith, a duly appointed and acting legal guardian of Darcy, or, had Gaylene's parental rights been severed and Darcy's custody been vested in such a party, one of the parties named in K.S.A. 59-2102 (5). Absent that consent, the trial court had no jurisdiction to grant the adoption.

The majority's discussion of the request for appointment of a guardian ad litem and the requested disqualification of the trial judge is dicta. While I agree with what is said on the guardian ad litem issue, I am not prepared to agree on the disqualification of the trial judge issue under facts of this case not appearing in the majority opinion.